UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QUEEN ANNE PARK HOMEOWNERS
ASSOCIATION, a Washington non-profit
corporation,

                Plaintiff,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign insurance company,

                Defendant.

C11-1579Z

MINUTE ORDER

     The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

     (1)    The motion for partial summary judgment brought by plaintiff Queen Anne Park Homeowners Association (the "HOA"), docket nos. 10 & 14, is DENIED without prejudice to raising the "collapse" issue again after the Washington Supreme Court decides *Vision One, LLC v. Philadelphia Indem. Ins. Co. / Sprague v. Safeco Ins. Co. of Am.*, Case Nos. 85350-9 & 85794-6, consolidated (argued Sep. 15, 2011). The HOA's motion presents the narrow issue of whether "collapse" has occurred when the structural integrity of a lateral, as opposed to a vertical, load-bearing member has been substantially impaired. Before the Court can address the lateral versus vertical distinction, however, the HOA must first establish, as a matter of law, that substantial impairment alone is sufficient under Washington law to constitute "collapse." With regard to the meaning of "collapse" within insurance policies like the one at issue, Washington courts have not yet adopted either the strict

MINUTE ORDER - 1

"rubble-on-the-ground" test or the less stringent "imminent collapse" standard.[1] Moreover, even assuming Washington courts would favor the more lenient approach, the precise contours of the "imminent collapse" standard remain unclear. Although "imminent collapse" has frequently been described as occurring when structural integrity is materially or substantially impaired,[2] the two tests are not necessarily equivalent, as recognized in *Ocean Winds Council of Co-Owners, Inc. v. Auto-Owner Ins. Co.*, 565 S.E.2d 306, 308 (S.C. 2002). In *Ocean Winds*, the court observed that a standard requiring only substantial impairment might inappropriately convert insurance policies into "maintenance agreements," allowing recovery for damage that is significant but does not threaten collapse. In contrast, the imminent collapse test, requiring proof that "collapse is likely to happen without delay," reasonably protects insureds while encouraging them to mitigate their damages by effecting repairs to prevent actual collapse.[3] The parties have not adequately briefed whether Washington courts would likely view substantial impairment as equivalent to, or something less than, imminent collapse[4] and, if different, which of the two standards governs.[5] In light

---

[1] *See* Thomas V. Harris, Wash. Ins. Law at § 48.06 (3d ed. 2010 & Supp. 2011); *Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wn. App. 597, 602, 17 P.3d 626 (2000) ("Washington has not decided the meaning of 'collapse' as used in first-party insurance policies, and this case does not require us to do so . . . ."); *see also KAAPA Ethanol, LLC v. Affiliated FM Ins. Co.*, 660 F.3d 299, 305 (8th Cir. 2011) (describing the two different approaches to interpreting "collapse" clauses).

[2] *See*, *e.g.*, *Whispering Creek Condo Owner Ass'n v. Alaska Nat'l Ins. Co.*, 774 P.2d 176 (Alaska 1989); *Fantis Foods, Inc. v. N. River Ins. Co.*, 753 A.2d 176 (N.J. Sup. Ct. App. Div. 2000).

[3] *See also KAAPA*, 660 F.3d at 305-06 (predicting that "Nebraska would adopt some sort of imminence requirement in applying the material-impairment standard," and holding that the trial court erred in instructing the jury that "[a] structure or part of a structure does not need to fall down or be in imminent danger of falling down in order for it to have 'collapsed'"); *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 290-91 (3d Cir. 2004) (holding that the trial court's finding of "collapse" based on a building's vulnerability to 90-mile-per-hour winds, which might occur once in 20 years, "wrenched [imminent] from any reasonable definition of the word," which has a dictionary meaning of "ready to take place: near at hand," "likely to occur at any moment: impending," or "likely to happen without delay").

[4] *See Sprague v. Safeco Ins. Co. of Am.*, 158 Wn. App. 336, 342, 241 P.3d 1276 (2010) (viewing the insurer's expert's finding of imminence and substantial impairment as sufficient, although perhaps not both required, to constitute collapse), *review granted*, 171 Wn.2d 1028, 257 P.3d 662 (2011).

[5] In opposing the HOA's motion, defendant has taken the position that collapse means actual collapse, and that substantial impairment is an appropriate standard only when the policy covers "risk of direct physical loss involving collapse" as opposed to simply "collapse." The Court is unpersuaded by defendant's argument. A similar attempt to distinguish between "collapse" and "risk of collapse" was rejected in *Dally Props., LLC v. Truck Ins. Exch.*, 2006 WL 1041985 (W.D. Wash. Apr. 5, 2006). Indeed, the Tenth Circuit decision that launched the "imminent collapse" standard involved the term "collapse" standing alone. *See Travelers Fire Ins. Co. v. Whaley*, 272 F.2d 288, 289 (10th Cir. 1959). Moreover, differentiating between "collapse" and "risk of collapse" is inconsistent with the rationales underlying the "modern trend," *Ocean Winds*, 565 S.E.2d at 308, of finding the policy language ambiguous and construing it in favor of the insured, including (i) that the insurer could have included a narrow definition of "collapse" in the policy, but did not do so; and (ii) that requiring a building to fall down before allowing coverage would be economically unsound and/or would render the policy illusory. *See Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220, 1227-28 (D. Utah 1996); *Thomasson v. Grain Dealers Mut. Ins. Co.*, 405 S.E.2d 808, 809 (N.C. Ct. App. 1991) ("To require that the house fall in completely would make the provision of

of the consolidated cases pending before the Washington Supreme Court, the Court declines to further address the matter at this time.

(2) The motion for summary judgment brought by defendant State Farm Fire and Casualty Company ("State Farm"), docket no. 16, is also DENIED, with prejudice as to the time-bar issue and without prejudice as to the admissibility of expert testimony. In contending that the HOA's claims are precluded by the policy's two-year limit on bringing suit, State Farm ignores the holdings of both *Panorama Village Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 26 P.3d 910 (2001), and *Ellis Court Apartments Ltd. P'ship v. State Farm Fire & Cas. Co.*, 117 Wn. App. 807, 72 P.3d 1086 (2003). As recognized in both opinions, a substantial impairment of structural integrity amounting to a collapse might commence during a policy period, but remain hidden (and therefore constitute a continuing occurrence of loss) for some time after the policy expires; in such circumstances, a suit will be timely so long as it is filed within the contractual period after the decay is revealed. *Panorama*, 144 Wn.2d at 144-45; *Ellis Court*, 117 Wn. App. at 818-19. In this case, the parties do not dispute that the decay at issue was concealed until June 2011, when the parties' experts observed the decay through exploratory openings. This action commenced in September 2011, long before the policy's two-year suit limitation will expire in June 2013. In arguing that the HOA cannot present admissible expert testimony, State Farm relies almost exclusively on an unpublished opinion of the Washington State Court of Appeals. *Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co.*, 2011 WL 5921558 (Wn. Ct. App. Nov. 28, 2011). In *Lake Chelan Shores*, however, both the trial court and Division I applied the "general acceptance" standard articulated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which was rejected in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and does not govern the admissibility of expert testimony in this Court. Moreover, State Farm has offered no basis for believing that the HOA's expert would not or could not improve upon the showing made by the experts in *Lake Chelan Shores*. Indeed, State Farm has provided no expert report, no deposition transcript, and no summary of the HOA's expert's anticipated testimony. State Farm's evidentiary objections would be more appropriately brought in a motion in limine, sometime after the parties have engaged in the discovery process.

(3) The HOA's motion for continuance, docket no. 19, of State Farm's motion for summary judgment, is STRICKEN as moot.

(4) The Court RESETS the following deadlines:

| | |
|---|---|
| Conference pursuant to Fed. R. Civ. P. 26(f) | May 25, 2012 |
| Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) | June 15, 2012 |
| Combined Joint Status Report and Discovery Plan | June 15, 2012 |

///

///

///

---

coverage for 'hidden' decay and damage illusory."). Such rationales apply equally to both "collapse" and "risk of collapse" clauses.

MINUTE ORDER - 3

(5) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

DATED this 27th day of April, 2012.

WILLIAM M. McCOOL, Clerk

By <u>    s/ Claudia Hawney    </u>
Claudia Hawney
Deputy Clerk

MINUTE ORDER - 4