UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QUEEN ANNE PARK HOMEOWNERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | C11-1579 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on plaintiff's renewed motion for partial summary judgment, docket no. 54.  Having reviewed the parties' briefs, as well as papers filed in connection with the parties' previous cross-motions for summary judgment, the Court enters the following Order.

**Background**

The Queen Anne Park Condominium, which consists of two buildings located at 19 and 20 Eturia Street in Seattle, was constructed sometime between 1984 and 1987.  *See* Somers Decl. at ¶ 2 (docket no. 17); Perrault Report at 2, Ex. A to Harper Decl. (docket no. 11); *see also* Ex. A to Shrout Decl. (docket no. 12 at 5); *compare* Ex. C to

ORDER - 1

Dibble Decl. (docket no. 41 at 11-12) (indicating construction in 1985). Defendant State Farm Fire and Casualty Company ("State Farm") annually issued policies insuring the condominium buildings from 1992 to 1998. The parties do not indicate what insurance, if any, was in effect prior to 1992 or after 1998. No dispute exists, however, that the policies at issue expired thirteen (13) years before this litigation commenced.

The State Farm condominium policy covered "accidental direct physical loss" to covered property unless the loss was limited or excluded. Ex. A to Shrout Decl. (docket no. 12 at 10). Among the exclusions enumerated in the policy was "loss either consisting of, or directly and immediately caused by . . . smog, wear, tear, rust, corrosion, fungus, mold, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." Id. at ¶ 2.d (docket no. 12 at 11).[1] The condominium policy also contained an extension of coverage for "collapse of a building or any part of a building caused only by one or more" of six listed perils, including "hidden decay." Id. at ¶ 4.a(2) (docket no. 12 at 13). "Collapse" was defined as excluding "settling, cracking, shrinking, bulging or expansion." Id. at ¶ 4.c (docket no. 12 at 14).

In 2009, plaintiff Queen Anne Park Homeowners Association (the "HOA") discovered that the siding on the condominium buildings was leaking. State Farm's investigator, James Perrault, a professional and structural engineer, visited the site in

---

[1] This exclusion contained an ensuing loss provision that provided coverage if one of the excluded causes resulted in accidental direct physical loss by any of the "Specified Causes of Loss" or by building glass breakage. Id. "Specified Causes of Loss" was explicitly defined in the policy as referring to a list of 14 events, including fire, explosion, smoke, and water damage, none of which are relevant in this case. Id. at 1 (docket no. 12 at 7).

ORDER - 2

October 2010. In June 2011, Perrault supervised the removal of siding and trim at certain locations on the exterior of the buildings. Also present for these "exploratory openings" was Robb Dibble, a professional engineer retained by the HOA. Based on their respective observations during this inspection, Perrault and Dibble reached opposite conclusions concerning whether the decay, which had been hidden by the siding, had reached a state of "substantial structural impairment." <u>See</u> Perrault Report, Ex. A to Harper Decl. (docket no. 11); Dibble Decl. at ¶ 11 (docket no. 13).

Relying on Perrault's opinion, in August 2011, State Farm denied coverage. The HOA filed this declaratory judgment and breach of contract action in September 2011. <u>See</u> Complaint (docket no. 1). Before conducting any discovery, the parties filed cross-motions for summary judgment. Those motions were denied via Minute Order entered on April 27, 2012, docket no. 48. With regard to the HOA's motion concerning the meaning of "collapse" for purposes of the policy at issue, the Court's denial was without prejudice to raising the issue after the Washington Supreme Court decided two then-pending cases. Decisions have since been issued in <u>Vision One, LLC v. Phila. Indem. Ins. Co.</u>, 174 Wn.2d 501, 276 P.3d 300 (2012), and <u>Sprague v. Safeco Ins. Co. of Am.</u>, 174 Wn.2d 524, 276 P.3d 1270 (2012), and the HOA has renewed its motion for partial summary judgment.

**Discussion**

    A.    **Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

ORDER - 3

1 The moving party bears the initial burden of demonstrating the absence of a genuine issue
2 of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if
3 it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty*
4 *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the
5 adverse party must present affirmative evidence, which "is to be believed" and from
6 which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  When the
7 record, however, taken as a whole, could not lead a rational trier of fact to find for the
8 non-moving party, summary judgment is warranted.  *See* *Beard v. Banks*, 548 U.S. 521,
9 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time
10 for discovery and upon motion, against a party who fails to make a showing sufficient to
11 establish the existence of an element essential to that party's case, and on which that
12 party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### B.     Meaning of "Collapse"

The parties do not dispute that Washington law governs the insurance contracts at issue.  Indeed, the policy at issue indicates that, when a provision "is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply."  Ex. A to Shrout Decl. (docket no. 12 at 41).  Washington courts construe insurance policies as a whole, giving the policy the "fair, reasonable, and sensible construction" that an average person purchasing insurance would.  *Vision One*, 174 Wn.2d at 512; *see also* *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 137, 26 P.3d 910 (2001).  Inclusionary clauses are liberally construed in favor of coverage, while exclusionary provisions are interpreted strictly against the insurer.

ORDER - 4

*Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia ("Wall")*, 379 F.3d 557, 560 (9th Cir. 2004) (summarizing Washington law).

If the language of a policy is "clear and unambiguous," the Court must "enforce it as written and may not modify it or create ambiguity where none exists." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665-66, 15 P.3d 115 (2000).  On the other hand, if a provision is ambiguous, the Court may rely on extrinsic evidence of the parties' intent to interpret the clause, and may resolve any remaining ambiguities against the insurer as drafter of the policy.  *Id.*  A term of an insurance contract is ambiguous when it is "fairly susceptible to two different interpretations, both of which are reasonable."  *Id.*

The question before the Court involves the meaning of the term "collapse" as used in the extensions of coverage in the policy at issue.  The extent to which similar insurance contracts provide coverage has long been the subject of debate.  *See* Annotation, *What constitutes "collapse" of a building within coverage of property insurance policy*, 71 A.L.R.3d 1072 (originally published 1976).  The question was apparently first addressed in 1959.  *See Travelers Fire Ins. Co. v. Whaley*, 272 F.2d 288 (10th Cir. 1959).  In *Travelers*, the policy insured against loss resulting from "[c]ollapse of building(s) or any part thereof."  *Id.* at 289.  The Tenth Circuit, applying Kansas law, concluded that the term "collapse" was "susceptible of being construed, without violence, as having more than one meaning."  *Id.* at 290.  Rejecting the insurer's suggested dictionary definition, namely "to break down, to fall in irregular mass, or a flattened form through loss of rigidity of support," *id.* at 289-90, in essence, "to crash[] down in a heap of rubble," *id.* at

ORDER - 5

290, the Tenth Circuit ascribed to the word a meaning favorable to the insured, namely as "connoting a sinking, bulging, cracking, pulling away of the [basement] wall so as to impair its function of supporting the superstructure and destroying its efficiency as a habitation." _Id._ at 290-91.

Subsequent cases fall into two categories. The majority of courts have followed the Tenth Circuit's lead and held that, in addition to actual collapse, imminent collapse is covered.[1] In contrast, a minority of courts have used a strict "rubble-on-the-ground" standard.[2] _See_ _KAAPA_, 660 F.3d at 305 (describing the two different approaches to interpreting "collapse" clauses). Washington courts have not yet directly addressed the issue. _See_ Thomas V. Harris, Wash. Ins. Law at § 48.06 (3d ed. 2010 & Supp. 2011).[3]

---

[1] _See_ _KAAPA Ethanol, LLC v. Affiliated FM Ins. Co._, 660 F.3d 299 (8th Cir. 2011) (predicting Nebraska law); _Buczek v. Cont'l Cas. Ins. Co._, 378 F.3d 284 (3d Cir. 2004) (applying New Jersey law); _Am. Concept Ins. Co. v. Jones_, 935 F. Supp. 1220 (D. Utah 1996); _Whispering Creek Condo. Owner Ass'n v. Alaska Nat'l Ins. Co._, 774 P.2d 176 (Alaska 1989); _Doheny W. Homeowners' Ass'n v. Am. Guarantee & Liab. Ins. Co._, 60 Cal. App. 4th 400, 70 Cal. Rptr. 2d 260 (1997); _Island Breakers - a Condo., Inc. v. Highlands Underwriters Ins. Co._, 665 So.2d 1084, 1085-86 (Fla. Dist. Ct. App. 1995) (Cope, J., concurring); _Fantis Foods, Inc. v. N. River Ins. Co._, 753 A.2d 176 (N.J. Sup. Ct. App. Div. 2000); _Royal Indem. Co. v. Grunberg_, 553 N.Y.S.2d 527 (N.Y. App. Div. 1990); _401 Fourth St., Inc. v. Investors Ins. Group_, 879 A.2d 166 (Pa. 2005); _Ocean Winds Council of Co-Owners, Inc. v. Auto-Owner Ins. Co._, 565 S.E.2d 306 (S.C. 2002); _Zoo Props., LLP v. Midwest Family Mut. Ins. Co._, 797 N.W.2d 779 (S.D. 2011); _Rankin v. Generali-U.S. Branch_, 986 S.W.2d 237 (Tenn. Ct. App. 1999).

[2] _See_ _Hilton Head Resort Four Seasons Centre Horizontal Prop. Regime Council of Co-Owners, Inc. v. Gen'l Star Indem. Co._, 357 F. Supp. 2d 885, 888 (D.S.C. 2005) (requiring "not just the threat of collapse, and not just collapse itself, but actual loss or damage caused by a collapse"); _Heintz v. U.S. Fid. & Guar. Co._, 730 S.W.2d 268, 269 (Mo. Ct. App. 1987); _see also_ _Fid. & Cas. Co. of N.Y. v. Mitchell_, 503 So.2d 870, 871 (Ala. Civ. App. 1987) (insect damage "constituted a sufficient and actual collapse of some parts of the house, thereby destroying the structural integrity of the building"); _cf._ _Rosen v. State Farm Gen'l Ins. Co._, 70 P.3d 351, 353 (Cal. 2003) (applying unambiguous policy language defining collapse as "actually fallen down or fallen into pieces").

[3] _See_ _Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co._, 104 Wn. App. 597, 602, 17 P.3d 626 (2000) ("Washington has not decided the meaning of 'collapse' as used in first-party insurance policies, and this case does not require us to do so, as Mercer Place and State Farm have agreed that the word 'collapse' as used in Mercer Place's policy mean[s] 'substantial impairment of structural integrity.'"); _see_

ORDER - 6

Recently, in *Sprague*, the Washington Supreme Court explicitly recognized the question, while declining to answer it. 174 Wn.2d at 529 ("We need not decide whether the deck had collapsed due to the loss of structural integrity even though it had not fallen to the ground.").

The Ninth Circuit and two judges of this district have predicted that Washington will adopt the imminent collapse, as opposed to the rubble-on-the-ground, standard. *See Wall*, 379 F.3d at 562-63; *Dally Props., LLC v. Truck Ins. Exch.*, 2006 WL 1041985 (W.D. Wash. Apr. 5, 2006); *Allstate Ins. Co. v. Forest Lynn Homeowners Ass'n*, 892 F. Supp. 1310 (W.D. Wash. 1995), *withdrawn from publication*, 914 F. Supp. 408 (W.D. Wash. 1996). *Sprague* raises doubt about the accuracy of this prediction. In *Sprague*, the insureds had installed a deck system, the supports for which were not adequately flashed, causing them to rot. 174 Wn.2d at 526-27. Experts declared the deck system to be in a state of imminent collapse due to the impairment of its structural integrity. *Id.* at 527. The insureds made a claim under their homeowners policy; the insurer denied coverage. The policy excluded losses caused by wet or dry rot and by construction defects. *Id.* Both of these exclusions, however, contained ensuing loss provisions, pursuant to which the insureds argued the "imminent collapse" should be covered. The majority in *Sprague* disagreed, holding that "[a]dvanced deterioration does not transmute the rotting process in some sort of alchemical fashion to a new and separate state of 'collapse.'" *Id.* at 530.

---

*also Panorama*, 144 Wn.2d at 140, 144-45 (holding merely that, based on a clause covering "risk of direct physical loss involving collapse" by "hidden decay," the "peril insured against continues to exist until at least the earlier of either (a) actual collapse or (b) the end of 'hidden decay'").

ORDER - 7

The majority concluded that the loss at issue resulted from rot, caused by construction defects, which were both excluded under the policy. *Id.* at 531.

The concurrence in *Sprague* went one step further and narrowly defined collapse as "to break down completely: fall apart in confused disorganization: crumble into insignificance or nothingness . . . fall into a jumbled or flattened mass." *Id.* at 538 (Alexander, J., concurring) (quoting Webster's Third New Int'l Dictionary 443 (2002)). With this meaning in mind, the concurrence indicated agreement with the majority's result, namely that coverage was not owed, but such conclusion was based on the fact that the deck "did not break down" or "fall apart or crumble." *Id.* In sum, according to the concurrence, although the structural integrity of the deck was substantially impaired, it was not in a state of collapse. In light of *Sprague*, the Court has significant doubt about whether Washington will follow the "imminent collapse" line of cases.

Moreover, even if the Court were to assume that the imminent collapse doctrine applies, the Court would not agree with plaintiff's assessment of the standard Washington would probably employ. Although imminent collapse has frequently been described as occurring when structural integrity is materially or substantially impaired,[4] Washington

---

[4] *See Whispering Creek*, 774 P.2d at 181 (holding that "[w]hen the condition of a building is such that its basic structure or its substantial integrity is materially impaired, it can no longer perform its function, and it is in immediate danger of complete collapse, the building is in a state of collapse within the meaning of the collapse provisions of this insurance policy"); *Fantis Foods*, 753 A.2d at 183 (under New Jersey law, "the collapse peril insured against does not require that structures fall; rather, without any narrowing internal definition, such a policy must be taken to cover any serious impairment of structural integrity that connotes imminent collapse threatening the preservation of the building as a structure or the health and safety of occupants and passers-by").

ORDER - 8

courts are unlikely to consider the two states equivalent.[5]  As recognized by at least one other court, "imminent collapse" and "substantial impairment" are distinct, with the latter standard being more lenient, and the former measure being more stringent.  See <u>Ocean Winds</u>, 350 S.C. at 270-71, 565 S.E.2d at 308.  In <u>Ocean Winds</u>, the court reasoned that the "substantial impairment" test might inappropriately convert the insurance policy into a "maintenance agreement," allowing recovery for damage that is significant but does not threaten collapse.  <u>Id.</u> at 271, 565 S.E.2d at 308.  The court in <u>Ocean Winds</u> instead adopted the more rigorous "imminent collapse" standard, which requires proof that "collapse is likely to happen without delay," observing that this definition reasonably protects insureds while encouraging them to mitigate their damages by effecting repairs to prevent actual collapse.  <u>Id.</u>  Given the reasoning of the majority and concurrence in <u>Sprague</u>, and the decision in <u>Ocean Winds</u>, the Court concludes that, even if Washington were to adopt a relaxed standard that is somewhere short of "rubble on the ground," it would require an insured seeking coverage under a collapse provision to show, in

---

[5] Division I has acknowledged that the jurisprudence in this area is unsettled.  <u>Seaman v. Farmers Ins. Exch.</u>, 2007 WL 2585036 at *5 (Wn. Ct. App. Sep. 10, 2007) ("While it appears that case law favors a broader definition of collapse than the actual, sudden collapse of a building, it does not offer us a useful distinction between the terms advanced by the parties in this case.  Under existing case law, either 'imminent collapse' or 'substantial impairment of structural integrity' could serve.  Since case law is unsettled regarding the definition of 'collapse,' and there is insufficient information in the record to guide this court in advancing a legal definition, we remand for a determination by the trial court, where expert testimony can provide guidance.").

ORDER - 9

addition to a substantial impairment of structural integrity, an imminent threat of collapse.[2]

**Conclusion**

For the foregoing reasons, the HOA's renewed motion for partial summary judgment, docket no. 54, is DENIED. Because State Farm has not cross-moved concerning the meaning of "collapse," the Court cannot at this juncture enter summary judgment in favor of State Farm. In light of the Court's ruling, however, the HOA is DIRECTED to show cause, within twenty-eight (28) days of the date of this Order, why summary judgment cannot be granted in favor of State Farm on the ground that "collapse" requires imminence, as well as substantial impairment, and that "collapse" cannot, as a matter of law, be imminent for over thirteen (13) years, which is the period of time since State Farm's policies were in effect.

IT IS SO ORDERED.

Dated this 8th day of November, 2012.

_Thomas S. Zilly_
Thomas S. Zilly
United States District Judge

---

[2] _See KAAPA_, 660 F.3d at 305-06 (predicting that "Nebraska would adopt some sort of imminence requirement in applying the material-impairment standard," and holding that the trial court erred in instructing the jury that "[a] structure or part of a structure does not need to fall down or be in imminent danger of falling down in order for it to have 'collapsed'"); _see also Buczek_, 378 F.3d at 290-91 (holding that trial court's finding of "collapse" based on a building's vulnerability to 90-mile-per-hour winds, which might occur once in 20 years, "wrenched [imminent] from any reasonable definition of the word," which has a dictionary meaning of "ready to take place: near at hand," "likely to occur at any moment: impending," or "likely to happen without delay").